[Cite as *In re Seawright*, 2011-Ohio-4319.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: RICHARD   SEAWRIGHT

RICHARD SEAWRIGHT

       Applicant

 Case No. V2010-50736

Commissioners:
Karl C. Kerschner
Elizabeth Luper Schuster

ORDER OF A TWO
COMMISSIONER PANEL

{1}On December 10, 2009, the applicant, Richard Seawright, filed a compensation application as the result of a shooting incident which occurred on August 16, 2009.  On March 26, 2010, the Attorney General issued a finding of fact and decision denying the applicant's claim pursuant to R.C. 2743.60(C), failure to fully cooperate with law enforcement.  On April 6, 2010, the applicant submitted a request for reconsideration.  On July 26, 2010, the Attorney General rendered a Final Decision finding no reason to modify the initial decision.  On August 20, 2010, the applicant filed a notice of appeal from the July 26, 2010 Final Decision of the Attorney General. Hence, a hearing was held before commissioners Ostry, Kerschner, and Schuster on November 18, 2010 at 11:00 A.M.

{2}The applicant appeared at the hearing while Assistant Attorney General Heidi James appeared on behalf of the state of Ohio.

{3}The applicant stated that he did cooperate with law enforcement and his claim should be granted.

{4}The Attorney General asserts the efforts of law enforcement were substantial and diligent.  However, at no time did the applicant comply with the reasonable

requests of law enforcement.   The Attorney General asserts that when the applicant did contact police his concern was for the return of his weapon, which had been taken by police at the scene of the incident, and not the investigation of the criminal conduct surrounding his injuries.   Accordingly, the Attorney General's decision should be affirmed.

{5}The applicant called his father, Richard Black, to testify.  Mr. Black related that he picked the applicant up from the hospital, at which time the applicant was instructed by his doctor to stay in bed for the next four months.  The only time the applicant was allowed to leave his residence was for medical appointments.  Mr. Black accompanied the applicant to those appointments since the applicant was not allowed to drive.  The applicant had an operation after four months to remove one of the six bullets which struck him at the time of the criminally injurious conduct.

{6}Mr. Black revealed that the applicant was very concerned about the recovery of his duty weapon, which was believed to be in the possession of the Cleveland Police Department.   Mr. Black stated he accompanied his son as he visited various precincts throughout the Cleveland metropolitan area to recover the weapon, but to no avail. With respect to the police report, Mr. Black confirmed that the applicant informed Detective Bilko of the Cleveland Police Department that the initial police report was incorrect, offered correct information over the phone, and identified the offenders. However, Detective Bilko stated this information could not be taken over the phone, and the applicant was instructed to come to the police department in person, although at the time his doctor had ordered strict bed rest.

{7}Upon cross-examination, Mr. Black admitted the first time he took the applicant to the precinct office, he tried to obtain his weapon and did not make a report relating to the criminally injurious conduct.  Whereupon, the witness' testimony was concluded.

{8}The applicant testified he has been employed by Cuyahoga County Protective Services for the past 13 years.   He related exactly how the criminally

injurious conduct occurred. While at the hospital he gave the officer a description of what happened, but he stated a review of the initial police report did not accurately reflect the incident or the property in his vehicle at the time of the incident.

{9}The applicant related he contacted Detective Bilko via telephone and informed her of the omissions and discrepancies contained in the report. However, he was informed he needed to come to the station to fill out a report and to review mug shots, even though he informed the detective he was unable to do so due to his medical condition. Furthermore, he stated he cooperated and provided Detective Bilko with the names of the offenders. The applicant asserts he did cooperate but the police refused to come to his house and subsequently the case was closed.

{10}Upon cross-examination, the applicant related that he recognized the offenders and later provided the police with this information. The applicant stated he spoke to an officer at the scene and at the hospital and provided this officer with all the information surrounding the incident. Furthermore, he apprised the officer that his duty weapon was contained in the trunk of his vehicle and was assured that the weapon would be placed in safe keeping. The applicant stated he spoke to Detective Bilko on the phone one or two months after the incident, told her about omissions and discrepancies in the initial report, and informed her who the offenders were. He related that the detective stated he should come to the station to view a photo lineup. The applicant stated he was unable to do so since he was on bed rest and requested she come to his residence so he could view the photo lineup. The detective never complied with this request. The applicant stated he never viewed a photo lineup because by the time he was well enough to do so the case was closed. Whereupon, the applicant's testimony was concluded.

{11}The Attorney General called Detective Lynn Bilko to testify via telephone. Detective Bilko was assigned to the third district of the detective bureau of the Cleveland Police Department. Detective Bilko stated the first contact she made with the applicant was on September 18, 2009, when she left a voice mail message at his

residence.   On September 21, 2009, she sent the applicant a certified letter requesting he contact her.   She called him again on September 27, 2009 and finally spoke with him on September 28, 2009.   She asserts she spoke with him again on September 30, 2009 and finally spoke with him on October 14, 2009 to set up an appointment so he could view a photo lineup.

{12}The detective related on September 28, 2009, the applicant provided her with a statement over the phone as to what happened at the time of the criminally injurious conduct, however, she informed him to come in to the department so a report could be typed.   She stated he was upset about the inaccuracies contained in the initial report.   She believes his biggest concern was about the location of his weapon.   The detective related with respect to the weapon she believed it was being held due to pending marijuana possession and domestic violence charges.   The detective stated that the case would not continue until the applicant came to the office to view the photo lineup and have a report typed.   Although the applicant requested the detective come to his residence she refused.   The case has not gone forward based upon the applicant's failure to go to the police office.   Detective Bilko stated this applicant's failure to cooperate substantially impaired or impeded the investigation of this matter.

{13}Upon cross-examination, Detective Bilko admitted that the applicant provided a detailed description of what happened on the day of the incident via telephone.   The officer also admitted that the applicant indicated he was taking medications for the injuries he sustained and wished to correct the initial police report over the phone.   Furthermore, the detective acknowledged that the applicant told her he was unable to walk and could not leave his residence.   Finally, the detective conceded that the applicant provided her with names of the suspected offenders.

{14}Upon questioning by the panel of commissioners, Detective Bilko, after reviewing  the initial police report, could find no instances where the applicant was uncooperative with law enforcement either at the crime scene or at the hospital.   She also admitted that when the applicant appeared at the police station some four months

after the incident it was possible that someone would have told him the case was closed. However, Detective Bilko insisted that the applicant should have spoken to her about the status of his case. Detective Bilko stated the applicant was cooperative with respect to giving the names of the alleged offenders, but he did not come into the office to give a formal statement or to view the photo lineup.

{15}Although Detective Bilko acknowledged that the applicant requested to view the photo lineup at home due to his medical condition, she stated photo lineups were to be conducted only at the office. She viewed the applicant as being uncooperative because he never appeared in person at the police station.

{16}On re-direct examination by the Attorney General, Detective Bilko emphasized that no criminal investigation could be conducted unless the applicant appeared in person at the police station to review a photo lineup. Furthermore, the applicant was more focused on the whereabouts of his gun and mistakes in the initial police report than in helping in the investigation of the criminal conduct. Whereupon, the testimony of Detective Bilko was concluded.

{17}In closing, the applicant stated he provided the police with information surrounding the incident, but the police failed to follow through. He asserts he was cooperative and this claim should be granted. {18}The Attorney General asserts the applicant was uncooperative because neither a photo lineup was conducted nor a statement was made at the police station which was the Cleveland Police Department's protocol. Accordingly, the Attorney General's Final Decision should be affirmed. Whereupon, the hearing was concluded.

{19}R.C. 2743.60(C) states:

"(C) The attorney general, a panel of commissioners, or a judge of the court of claims, upon a finding that the claimant or victim has not fully cooperated with appropriate law enforcement agencies, may deny a claim or reconsider and reduce an award of reparations."

{20}The Attorney General has the burden with respect to proof of non-cooperation with law enforcement authorities [exclusionary criteria R.C. 2743.60]. *In re Williams*, V77-0739jud (3-26-79); and *In re Brown*, V78-3638jud (12-13-79).

{21}"As a general rule any action, inaction, or inexcusable neglect by an applicant which substantially impedes or impairs investigation or prosecution proceedings which have been initiated by the law enforcement authorities or which would have been initiated but for the action, inaction, or inexcusable neglect, constitutes a failure to fully cooperate as required by R.C. 2743.60(C)."   *In re Dray* (1989), 61 Ohio Misc. 2d 417, 419.

{22}On April 6, 2011, the court issued a notice informing the parties that pursuant to Rule 1.12(b) of the Rules of Professional Conduct, Commissioner Randi M. Ostry recused herself from the case at bar and requested the parties file written notification by May 6, 2011 as to whether they want the motion decided by the two remaining panel commissioners who sat at the hearing; or they wanted a randomly selected third commissioner to review the case file and hearing and reach a decision together with the two sitting commissioners; or they want a rehearing of the matter.

{23}On April 20, 2011 and April 26, 2011, the applicant and the Attorney General respectively filed notices wishing to proceed with this matter based upon the decision of the two remaining panel of commissioners.

{24}Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{25}Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause.  The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{26}The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. The court is free to believe or disbelieve, all or any part of each witness's testimony. *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548.

{27}From review of the case file and upon full and careful consideration given to all the testimony presented and the arguments of the parties at the hearing, we find the applicant fully cooperated with law enforcement and accordingly, the Attorney General's decision shall be reversed.

{28}We find the applicant's actions of describing the events surrounding the shooting incident to the officer at the scene of the crime and at the hospital, speaking to the detective in charge of the case on three separate occasions via telephone, informing the detective of the names of the suspected assailants; providing the detective with the name of the witness to the shooting; and requesting the detective come to his residence, due to his medical condition, to take a statement and view the photo lineup evidences a desire to cooperate. We find no evidence or testimony was submitted to rebut the credible testimony presented by the applicant. While the applicant did express his displeasure with discrepancies and omissions contained in the police report and was concerned about the recovery of his duty weapon, we do not find these collateral issues constitute either a failure to cooperate or an impairment of the criminal investigation. Finally, considering the fact that the applicant was a gunshot victim we do not believe his request that the police come to his residence to take a report or view a photo lineup to be unreasonable.

{29}Consequently, the July 26, 2010 decision of the Attorney General is reversed.

IT IS THEREFORE ORDERED THAT

{30}1) The July 26, 2010 decision of the Attorney General is REVERSED and judgment is rendered in favor of the applicant;

{31}2)   This claim is remanded to the Attorney General for total economic loss calculation and decision;

{32}3)   This order is entered without prejudice to the applicant's right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{33}4)   Costs are assumed by the court of claims victims of crime fund.

_____
KARL C. KERSCHNER
Commissioner

_____
ELIZABETH LUPER SCHUSTER
Commissioner

ID #I:\VICTIMS\2010\50736\V2010-50736 Seawright.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Cuyahoga County Prosecuting Attorney and to:

Filed 5-16-11
Jr. Vol. 2278, Pgs. 163-171
Sent to S.C. Reporter 8-26-11